IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES C. WOODHAM,** | : | |
| Petitioner | : | No. 1:25-cv-00575 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **SUPERINTENDENT OF SCI HOUTZDALE, et al.,** | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by pro se Petitioner James C. Woodham ("Woodham") in which he raises challenges to the weight and sufficiency of the evidence supporting his criminal convictions, as well as a claim that his trial counsel was ineffective. The Court previously dismissed Woodham's weight-of-the-evidence claims and ordered him to show cause why the Court should not dismiss the remainder of his petition as untimely. Woodham timely responded to the Court's Order, arguing that he is entitled to equitable tolling of his petition due to governmental interference and ineffective assistance of counsel, and that the untimeliness of his petition should be excused due to his actual innocence. For the reasons set forth below, Woodham's arguments for equitable tolling and invocation of the actual-innocence exception are meritless and, as such, the Court will dismiss the remainder of Woodham's Section 2254 petition as time-barred.

I.  BACKGROUND

On November 15, 2019, a jury sitting in the Court of Common Pleas of Bradford County found Woodham guilty of one (1) count of theft by deception (18 Pa. C.S. § 3922), one (1) count of criminal attempt to commit retail theft (18 Pa. C.S. §§ 901, 3929), and two (2) counts of conspiracy to commit retail theft (18 Pa. C.S. §§ 903, 3929).  See Commonwealth v. Woodham,

Nos. 378 MDA 2020, 379 MDA 2020, 380 MDA 2020, 2021 WL 1754436, at *1 (Pa. Super. Ct. May 4, 2021) (unpublished) ("Woodham I").[1] The facts underlying those convictions are as follows:

> Tonya Steele, an Asset Protection Specialist employed by Walmart in Sayre, Pennsylvania; David Horton, an employee of the same Walmart; . . . and alleged co-conspirator, Jessica Parker, were called by the Commonwealth to testify. Photographs from the Walmart surveillance videos showing Woodham and Parker together were admitted. Woodham testified on his own behalf. The evidence adduced at trial established the following:
>
> In October of 2018, Woodham and Parker arrived at the Walmart in Sayre, PA in a red car. While moving throughout the store, Parker placed items into the shopping cart. She also maneuvered the items often and used a comforter to cover up smaller items. They approached the checkout counters. Both walk[ed] back and forth for approximately 20 minutes, paying attention to the doorways to see if an associate was present. While Woodham purchased some snacks and checked out at the self-checkout, Parker continued walking back and forth, looking over the checkout aisles. Eventually, she pushed the cart through an unattended aisle. As Parker was exiting the store, Steele . . . approached her and asked for a receipt. Parker stated she did not have one and exited the store, leaving the cart and merchandise behind. Woodham was waiting for her and told Steele he "didn't do anything." Woodham exited the store right behind Parker. Woodham and Parker left in the same red car they arrived in. The value of the merchandise found in the cart was a little over $800. Woodham claims that he only had an inkling that Parker was attempting to commit theft, but Parker said she told Woodham what she was doing and that he was to be the "lookout."
>
> In May of 2019, Woodham and Parker arrived at the Walmart in Sayre, PA again, this time in a blue/gray van. Upon entering the store, Parker was wearing a black wig. While moving throughout the store, Parker was the only one who placed items

---

[1] The Commonwealth charged Woodham with theft-related offenses in three separate criminal informations, all which were consolidated for the jury trial. See id. at *1 & n.5; see also Commonwealth v. Woodham, No. CP-08-CR-0000633-2019 (Bradford Cnty. Ct. Com. Pl. filed Oct. 19, 2018); Commonwealth v. Woodham, No. CP-08-CR-0000634-2019 (Bradford Cnty. Ct. Com. Pl. filed May 16, 2019); Commonwealth v. Woodham, No. CP-08-CR-0000636-2019 (Bradford Cnty. Ct. Com. Pl. filed June 15, 2019) ("No. 636-2019 Dkt."). The Court takes judicial notice of the dockets in Woodham's underlying criminal cases, which are available on the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch (last visited November 20, 2025)). See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

> into the shopping cart. Parker told Woodham what she was doing. Woodham waited in the vestibule while Parker attempted to leave the store with the merchandise. As Parker was exiting the store, Horton confronted Parker about a receipt. Parker, no longer wearing the wig, produced a Lowe's receipt and then claimed that her boyfriend may have the correct receipt. Parker then exited the store, leaving the cart and merchandise behind. The value of the merchandise found in the cart was over $300. Woodham claims that he waited in the vestibule because Parker had his keys. Parker claims that she never had Woodham's keys.
>
> In June of 2019, Woodham, while entering the Walmart in Sayre, PA, found on the ground a receipt for motor oil purchased at a Walmart in Painted Post, NY. The receipt showed cash payment and did not give the name of the purchaser. Woodham entered the subject store empty handed. Woodham took possession of a jar of motor oil from a shelf in the store matching the description on the receipt from the Painted Post Walmart. Woodham completed a cash return for the motor oil using the receipt from Painted Post. Woodham claims that he purchased the motor oil in Painted Post using his cash card. Woodham also claims that there was over $5,000 on his cash card coming from social security income back payments. Parker claims that she did not enter the store that day but that she and Woodham drove to Walmart in Woodham's brother's red car. She claims that she waited in the car because she did not feel well. There are no photos showing Parker in the store on that day.

See id. at *1–2 (cleaned up).

On January 13, 2020, the trial court sentenced Woodham to an aggregate sentence of imprisonment for a minimum of forty-two (42) months to a maximum of one-hundred-eight (108) months' imprisonment. See id. at *2. Woodham filed post-sentence motions, which the trial court denied. See id. at *3. Thereafter, Woodham filed a notice of appeal to the Pennsylvania Superior Court. See id.

The Superior Court issued an opinion on May 4, 2021, in which it affirmed Woodham's convictions except for his criminal attempt to commit retail theft conviction and remanded the case to the trial court for resentencing. See id. at *1, 8. On July 30, 2021, Woodham was resentenced to an aggregate term of imprisonment for a minimum of thirty (30) months to a maximum of eighty-four (84) months. See Commonwealth v. Woodham, Nos. 1741 MDA 2022, 1742 MDA 2022, 1743 MDA 2022, 2023 WL 6158536, at *1 (Pa. Super. Ct. Sept. 21, 2023)

3

(unpublished) ("Woodham II"); No. 636-2019 Dkt.  Woodham did not appeal from his new judgment.

On November 22, 2021, Woodham filed a petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA"), in his three (3) criminal cases.  See Woodham II, 2023 WL 6158536, at *2.  The PCRA court appointed counsel to represent Woodham, and counsel filed an amended PCRA petition.  See id.  The PCRA court later denied Woodham's amended PCRA petition on the merits, after which Woodham filed an appeal to the Superior Court.  See id.  On September 21, 2023, the Superior Court affirmed the denial of Woodham's amended PCRA petition.  See id. at *1, 8.  Woodham then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on March 25, 2024.  See Commonwealth v. Woodham, 315 A.3d 833 (Pa. 2024) (table).

Woodham filed the instant Section 2254 petition on March 23, 2025.[2]  (Doc. No. 1.)  In the petition, Woodham raises two (2) weight of the evidence claims, two (2) sufficiency of the evidence claims, and a claim that the PCRA court erred by not concluding that his trial counsel was ineffective for failing to object to, and "request[,] protective measures and/or limiting

---

[2]  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Here, Woodham includes a declaration with his petition in which he states that he provided his petition in the prison mailing system on March 23, 2025.  (Doc. No. 1 at 7.)  As such, the Court uses March 23, 2025, as the petition's filing date despite the fact that the petition was not docketed until March 31, 2025.

In addition, although Woodham neither remitted the filing fee nor sought leave to proceed in forma pauperis along with his petition, he later remitted the fee.  (Unnumbered Docket Entry After Doc. No. 5.)

instruction[s] to the [certain] testimony" elicited by the Commonwealth about Woodham's "alleged drug use and prior bad acts." See (Doc. No. 1-1 at 51–52, 73–74, 93).

The Court screened Woodham's Section 2254 habeas petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the Federal Courts. See R. 4, 28 U.S.C. foll. § 2254 ("The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it."). On July 8, 2025, the Court issued a Memorandum and Order which, inter alia, (1) dismissed Woodham's weight-of-the-evidence claims because they are not cognizable in habeas and (2) ordered Woodham to show cause why the Court should not dismiss his remaining sufficiency-of-the-evidence and ineffective-assistance-of-counsel claims as time-barred. (Doc. Nos. 6, 7). Woodham timely filed a written response to the Court's Order. (Doc. No. 8.) As such, the timeliness issue raised in the Court's Order is ripe for resolution.

## II. LEGAL STANDARD

District courts are tasked with conducting a preliminary review of Section 2254 habeas petitions. See R. 4, 28 U.S.C. foll. § 2254. When conducting this review, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." See id.

## III. DISCUSSION

### A. The Timeliness of Woodham's Section 2254 Habeas Petition

As noted above, the Court directed Woodham to show cause why the Court should not dismiss his Section 2254 habeas petition as time barred. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one (1)-year statute of limitations, which, as

5

pertinent here, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  See 28 U.S.C. § 2244(d)(1)(A).  When calculating the commencement of AEDPA's statute of limitations for purposes of subsection (A), the Court must determine when Woodham's criminal judgment became final.

"Under § 2244(d)(1)(A), a state-court criminal judgment becomes 'final' and the statute of limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.'"  See Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999) (quoting Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) and citing Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999)).  Here, Woodham's judgment became final on August 29, 2021, when he did not file an appeal to the Superior Court after his resentencing on July 30, 2021.  See Pa. R.A.P. 903(a)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court.").  Therefore, AEDPA's one (1)-year statute of limitations began to run on August 29, 2021, and Woodham had one (1) year from that date, i.e., until August 29, 2022, to file a Section 2254 petition unless any statutory or equitable tolling period applies.

Concerning statutory tolling, AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  See 28 U.S.C. § 2244(d)(2).  A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing."  See Lovasz v.

Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).  "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court."  Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001).  If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes.  See Merritt v. Blaine, 326 F.3d 157, 165–66 (3d Cir. 2003).

      Woodham appears to have timely filed a PCRA petition in the Court of Common Pleas on or about November 22, 2021.  At the time Woodham filed his PCRA petition, one hundred and fifteen (115) days of the one (1)-year AEDPA limitations period had passed.  However, once he filed his timely PCRA petition, the limitations period remained tolled until the conclusion of those proceedings in the Pennsylvania state courts.  Woodham's PCRA proceedings concluded with the Pennsylvania Supreme Court denying his petition for allowance of appeal on March 25, 2024.  At this point, the clock resumed on Woodham's time to file a Section 2254 petition in this Court.  By the time Woodham filed the instant habeas petition on March 23, 2025, three hundred and sixty-three (363) days had passed.  Overall, it appears that approximately four hundred and seventy-eight (478) days passed before Woodham filed his Section 2254 habeas petition, which is well beyond AEDPA's one (1)-year limitations period in Section 2244(d)(1)(A).  Given that Woodham's habeas petition appears to be facially untimely, the only way that the Court could consider it is if some form of equitable tolling applies.

      AEDPA's one-year statute of limitations is subject to equitable tolling "in appropriate cases."  See Holland v. Florida, 560 U.S. 631, 634, 649 (2010).  A "'petitioner' is 'entitled to equitable tolling' only if [they] show[] '(1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way' and prevented

7

timely filing." See id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (emphasis removed in original)); see also Pace, 544 U.S. at 419 (explaining that "[u]nder long-established principles, [a] petitioner's lack of diligence" will "preclude[] equity's operation" (citations omitted)). In generally, equitable tolling may be appropriate if (1) the petitioner has been "actively misled[;]" (2) the petitioner "has in some extraordinary way been prevented from asserting his rights;" or (3) the petitioner "has timely asserted his rights mistakenly in the wrong forum." See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006) (quoting Fahy, 240 F.3d at 244). "[T]here are no bright lines in determining whether equitable tolling is warranted in a given case. Nevertheless, courts must be sparing in their use of equitable tolling, and should do so only when the principles of equity would make the rigid application of a limitation period unfair." Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (internal quotation marks and citations omitted).

In his response to the Order to Show Cause, Woodham generally argues that "[t]here are genuine issues of material [f]acts in law and constitutional dimensions '[g]overnmental [i]nterference and actual innocents [sic]; [sic] and ineffectiveness of [a]ppointed [c]ounsel." See (Doc. No. 8). Despite identifying these general arguments, Woodham never specifies any governmental interference or ineffectiveness of counsel that prevented him from timely filing his habeas petition in this case and would justify the Court applying equitable tolling. Instead, his governmental interference and claims of ineffective assistance of counsel relate solely to the merits of his underlying habeas claims. See (id. at 1–13). For example, he complains that his various attorneys were ineffective for, inter alia: (1) inquiring early in the case about whether he would plead guilty (which would have resulted in him receiving a "7 year [sic] sentence"), see (id. at 2); (2) not calling his co-defendant, Jessica Parker ("Parker"), as a witness during his

8

preliminary hearing, see (id.); (3) not obtaining transcripts of hearings, see (id.); (4) failing to oppose consolidation of his criminal cases, see (id. at 2–3); (5) not enforcing a sequestration order during the trial, see (id. at 3); (6) refusing to call his "accuser," Keith Stackhouse, as a witness during the trial, see (id.); (7) failing to obtain certain surveillance footage as well as Parker's criminal record from other counties, see (id.); (8) refusing to file a direct appeal from Woodham's original sentencing as requested, see (id. at 5); and (9) failing to call certain witnesses during Woodham's PCRA proceedings, see (id. at 7).  These alleged incidents of ineffective assistance of counsel have no bearing on his ability to timely file his habeas petition.  Therefore, they do not warrant the Court applying equitable tolling in this case.

      As for governmental interference, Woodham asserts that his inability or difficulty with obtaining Parker's criminal records from other Pennsylvania counties, the State of New York, and the Federal Bureau of Investigation, during unidentified portions of his state proceedings, constitutes governmental interference.  See (id. at 6–8).  He also states that his "petition has been blocked by the police (Athens Township police[;] they are also the Bradford County Drug Task Force)[,] and by appointed counsel and the trial court, and this institution by returning his legal mail to sender."  See (id. at 13).  However, once again, Woodham fails to identify any fact showing that the police, his state-appointed counsel, the trial court, or his correctional institution impeded his ability to file his habeas petition.  Rather, he makes conclusory arguments and fails to connect any specific factual allegation to a delay in filing his habeas petition.  Therefore, his governmental interference arguments fail.  Overall, Woodham's ineffective-assistance-of-counsel and governmental-interference arguments do not show that any extraordinary circumstance prevented him from timely filing his Section 2254 petition in this case to justify the Court invoking equitable tolling.

As for Woodham's contention that the Court should excuse his untimely filing because of his actual innocence, the Court recognizes that the limitations period may be excused under the actual-innocence exception, which requires a petitioner to present new evidence that shows "it is more likely than not that no reasonable juror would have convicted the petitioner."  See McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013) (internal alterations omitted).  A petitioner invoking the actual innocence exception must "(1) present new, reliable evidence of [their] innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted [them] (i.e., a reasonable juror would have reasonable doubt about [their] guilt) in light of the new evidence."  See Wallace v. Mahanoy, 2 F.4th 133, 151 (3d Cir. 2021).

Here, Woodham contends that he is actually innocent of his crimes because the prosecution committed "fraud on the court" by knowingly presenting false testimony and withholding certain evidence from the defense.  See (Doc. No. 8 at 10–13).  This contention is meritless for several reasons.  First, the Court cannot discern the precise testimony Woodham believes was false other than that it came from Parker and Officer Thomas VanFleet.[3]  (Id. at 11.)  Second, Woodham fails to make a sufficient showing that any such testimony was false or that the prosecution knowingly presented false testimony; instead, he merely asserts in a conclusory fashion that the testimony was false and that the prosecution committed misconduct.  Third, the only allegedly withheld evidence appears to relate to an incident on June 28, 2019, where the Athens Township Police Department detained Parker for stealing from Walmart by herself (id.), and Woodham does not explain how this incident qualifies as "new" evidence.  Finally, Woodham falls far short of satisfying his burden to demonstrate by a preponderance of the

---

[3] Woodham's handwriting is very difficult to read in certain places.

evidence that no reasonable juror would have convicted him if they were aware of Parker's June 28, 2019 arrest, especially considering that they learned that she pleaded to two (2) counts of retail theft pertaining to her conduct during the events at issue in Woodham's cases and other criminal convictions from the State of New York. See (Doc. No. 1-1 at 31); McQuiggin, 569 U.S. at 394–95. Accordingly, there is no basis to excuse the untimeliness of Woodham's Section 2254 petition under the actual-innocence exception, and the Court will dismiss it with prejudice as untimely.

### B.    Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When deciding whether to issue a COA after a dismissal on procedural grounds, the Court applies the following standard:

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling . . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, jurists of reason would not find the disposition of this case debatable, i.e., that Woodham's weight-of-the-evidence claims are not cognizable in habeas and his remaining

claims are barred by AEDPA's one (1)-year statute of limitations. Accordingly, the Court will not issue a COA in this case.

## IV. CONCLUSION

For the reasons discussed above, the Court will dismiss the remaining claims in Woodham's Section 2254 habeas petition, decline to issue a COA, and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania